IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANNE MELISSA RANDALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  11-CV-367-JHP |
| ) | |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In the instant case arising under the Employee Retirement Income Security Act ("ERISA"), the Court has before it the administrative record concerning the claim at issue and the parties' briefs regarding their positions on the merits.  The Court has considered the evidence in the administrative record, the parties' briefs, and the applicable law, and makes the following findings of fact and conclusions of law.

**I.    PROCEDURAL POSTURE OF THE CASE.**

The parties agree that ERISA governs the claims of plaintiff Jeanne Melissa Randall ("Randall").  Consequently, the Court reviews this case "in a manner akin to an administrative appeal." *Flanagan v. Metropolitan Life Ins. Co.,* No. 05-CV-36-JHP-SAJ, 2006 WL 2571878 at * 1 (N.D. Okla. Sept. 5, 2006), *aff'd*, 251 Fed. App'x 484, 2007 WL 2807749 (10th Cir. Sept. 25, 2007) (unpublished).  The Court  bases its review on the evidence in the administrative record, which consists of the pertinent plan documents and the materials before Life Insurance Company of North America ("LINA") at the time of the claim determination.  *Hall v. Unum Life Ins. Co. of America,* 300 F.3d 1197, 1201 (10th Cir. 2002).  On February 27, 2012, LINA submitted a copy of the administrative record to the Court [ECF No. 16] from which LINA redacted personal information in accordance with Fed. R. Civ. P. 5.2(a).  LINA discovered that it inadvertently

omitted copies of the Group Policies from its submission of the administrative record, and corrected that omission on March 30, 2012. ECF No. 18.

## II.   FINDINGS OF FACTS.

### A.   The Accidental Death Benefits at Issue.

Thomas M. Randall ("Mr. Randall") was an employee of Lubbock Heart Hospital, and was covered by Lubbock Heart Hospital's group benefits plan. This plan includes Basic Accidental Death and Dismemberment ("AD&D") Group Accident Policy No. OK 980225 and Voluntary AD&D Group Accident Policy No. OK 980226 (collectively "the Group Policies"). Rec. 426-87. Although the Group Policies provide different benefit amounts, their provisions are substantively identical. LINA administers and insures the Group Policies. Mr. Randall named Randall as his beneficiary under the Group Policies. Rec. 424.

> The Group Policies contain an identical Intoxication Exclusion providing that:
>
> > benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from ….:
>
> > 10.   operating any type of vehicle while under the influence of alcohol …. Under the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred.

Rec. 435; 467.

### B.   Mr. Randall's Death.

On February 5, 2010 at 3:08 a.m., the Lubbock, Texas County Sheriff received a report of a reckless driver in a red pick up driving north in the southbound lane of I-27. Rec. 110. Deputy Sheriff Joseph Gilliam responded, and found a red Dodge pick up truck on the I-27/FM 1294 overpass. *Id.* The truck was facing the wrong direction on the highway, and had struck a concrete barrier that "separate[d] the southbound lane from road construction" on the overpass. *Id.* The truck was "wedged between the overpass's side and the concrete barrier." Rec. 87. The truck's air bags had deployed in the collision. Rec. 297.

Sheriff Gilliam found no one in the truck, and the doors were locked. Rec. 110. He searched for the driver, and saw a man at the bottom of the overpass, who proved to be Mr. Randall. *Id.* Mr. Randall did not have a pulse. *Id.* Sheriff Gilliam "detect[ed] a strong odor of an alcohol beverage coming from" Mr. Randall. *Id.* Another investigating officer "used a laser measuring device and estimated the distance of the fall from the top of the overpass at 22 feet." *Id.*

> One of the investigating officers stated that:
>
>> it appeared as though [Mr. Randall] . . . had exited his vehicle after crashing into a concrete barrier and fallen to his death by falling over another barrier on an overpass bridge located at FM 1294 and I-27.

Rec. 113. The Lubbock County Medical examiner at the scene stated that:

> it appeared that Mr. Randall, the vehicle's owner and occupant, was intoxicated and had an accident. Mr. [R]andall then got out of his truck and stumbled over the edge of the bridge, falling to his death.

*Id.*

The Lubbock County Medical Examiner conducted an autopsy of Mr. Randall. Rec. 130-36. The Medical Examiner described the circumstances of death as:

> A motor vehicle [Mr. Randall] was riding in was involved in a collision with fixed objects on an overpass. After the collision, he apparently exited the vehicle, went over the edge of the overpass and fell approximately 22 feet.

Rec. 130. The Medical Examiner identified the cause of death as "craniocerebral injuries due to blunt force injuries due to fall." *Id.* The toxicology report revealed that Mr. Randall had a BAC of 0.295. Rec. 131; 135.

### C. LINA's Claim Determination.

Randall submitted a claim for basic and supplemental AD&D benefits. Rec. 417. Randall described the circumstances leading up to Mr. Randall's death as:

> FM 1294 and I-27-Car Crash.  Thomas got out and fell from
> bridge.  Got disoriented from crash.

Rec. 419.

On March 3, 2010, LINA acknowledged its receipt of Randall's claim, and noted that it had begun its investigation of the claim.  Rec. 152.  On March 3, 2010, LINA also contacted the Institute for Forensic Science, the Lubbock County Sheriff's Department, and the Texas Department of Public Safety by telephone in order to request copies of the reports about Mr. Randall's death.  Rec. 151.  LINA followed up with various written communications.  *See*, *e.g*., Rec. 127-28; 142; 149-50.

LINA kept Randall informed of the status of its investigation.  *See, e.g.,* Rec. 118.  On April 13, 2010, LINA received the report of the Texas Department of Public Safety.  Rec. 102-05.  On April 14, 2010, LINA told Randall that it had received the last report, and indicated that its "standard review time is 7-10 business days."  Rec. 99.

On April 23, 2010, LINA made its claim determination.  Rec. 63-66.  LINA quoted the relevant provisions of the Group Policies, including the Intoxication Exclusion.  Rec. 63-64.  LINA then summarized the evidence in the administrative record concerning Mr. Randall's death.  Rec. 64-65.  LINA stated that:

> The Lubbock County Sheriff's report and your description on the
> claim form support that Mr. Randall fell from an overpass
> immediately following, and as a result of, the motor vehicle crash.
> Evidence further supports that Mr. Randall was operating his
> vehicle while intoxicated, as shown by the fact that he was
> traveling in the wrong direction on the Interstate and crashed into a
> concrete barrier.  In addition, it has been determined by the
> Lubbock County Medical Examiner's Office that Mr. Randall was
> operating his motor vehicle with a blood alcohol level of .295%,
> which is nearly four times the legal limit for operating a motor
> vehicle in the State of Texas.

Rec. 65.  LINA again cited the provisions of the Intoxication Exclusion.  *Id.*  LINA concluded that "[g]iven that Mr. Randall was operating a motor vehicle while intoxicated and crashed, the

subsequent fall is not an event independent of all other causes, but rather related to his driving while intoxicate[d], and is thus a specifically excluded event." *Id.*  LINA denied Randall's AD&D claims, and informed her of the appeal rights under the Group Policies and ERISA.  Rec. 65-66.

### D.  LINA's Appeal Determination.

On May 4, 2010, LINA received an appeal from Randall's counsel in Texas.  Rec. 57-61.  On May 13, 2010, LINA acknowledged its receipt of the appeal.  Rec. 56.  On June 10, 2010, LINA informed Randall's counsel that it was "waiting for the completion of a review by a forensic toxicology review[er]."  Rec. 55.  LINA indicated that it expected to make its appeal determination within 30 days.  *Id.*

On July 6, 2010, LINA received the report of Frederick W. Fochtman, Ph.D.  Rec. 49-51.  Dr. Fochtman is a Diplomate of the American Board of Forensic Toxicologists.  Rec. 51.  Dr. Fochtman stated that:

> The amount of alcohol found in Mr. Randall's postmortem blood is consistent with him drinking a significant amount of alcoholic beverage.  The Autopsy Report indicates that his body weight was 236 pounds.  To achieve a 0.295% BAC a person weighing 236 pounds would have had to consume at a minimum 18 twelve ounce beers.  Since alcohol is metabolized and dissipated while a person is consuming alcoholic beverages, it is likely that he consumed more than this amount.

Rec. 50.  Dr. Fochtman described the effects of a BAC above 0.08% on persons as:

> They will have decreased levels of attention, judgment and control.  As the level of alcohol increases the impairment becomes more severe.  There will be reduced visual acuity, reduced peripheral vision, increased reaction time, and disturbances of motion and dimensions.

Rec. 50-51.  Dr. Fochtman concluded that:

> Mr. Randall with a 0.295% BAC at the time of his death would have been severely intoxicated and impaired by the CNS

> depressant effects of alcohol. The amount of alcohol in his blood
> and the resultant impairment would contribute to his losing control
> of his vehicle and crashing into the construction barrier.
> Additionally, it also likely contributed to his inability to avoid
> falling from the overpass to his death.

Rec. 51.

On July 29, 2010, LINA issued its appeal determination. Rec. 38-42. LINA again quoted the relevant provisions of the Group Policy, and summarized the evidence in the administrative record. Rec. 38-40. LINA stated that "[i]n order to ensure accurate interpretation of the toxicological information, this claim was reviewed by Dr. Frederick Fochtman, a forensic toxicologist." Rec. 40. LINA then provided a detailed summary of Dr. Fochtman's findings. *Id.*

LINA concluded that "[b]ased upon a review of the information contained in our file, we have determined that the events preceding Mr. Randall's death are casually connected." Rec. 40. LINA based this conclusion on the facts that:

> Mr. Randall was operating his vehicle while his blood level was
> 0.295%. As a result of his drunk driving Mr. Randall drove down
> the wrong side of the highway and struck a concrete barrier. Mr.
> Randall was injured or disoriented as a result of his driving under
> the influence (DUI) related crash and the related disorientation
> lead [sic] to his fall from the overpass. Therefore, Mr. Randall's
> drunk driving was a factor which substantially contributed to his
> death inasmuch as his driving under the influence (DUI) related
> crash led to his immediately ensuing intoxicated fall from the
> overpass at the scene.

*Id.* LINA again found that the Intoxication Exclusion barred Randall's claims. Rec. 41

### III.   CONCLUSIONS OF LAW.

####   A.   The Court Will Decide This ERISA Case Under the Arbitrary and Capricious Standard of Review.

Randall has acknowledged that the Court will consider this case under the arbitrary and capricious standard of review. ECF No. 17, at 6. Under the arbitrary and capricious standard of review, the Tenth Circuit has held that:

> '[t]he Administrator['s] decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by the facts within [its] knowledge to counter a claim that it was arbitrary and capricious.'

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1460 (10th Cir. 1991)).  A district court will uphold a claim administrator's decision "unless it is 'not grounded on *any* reasonable basis.'"  *Id.* (emphasis in original).  When a court reviews a claim decision under the arbitrary and capricious standard of review, the court '"need only assure that the administrator's decision fall[s] somewhere on the continuum of reasonableness – even if on the low end."'  *Id.* (quoting *Vega v. National Life Ins. Serv., Inc.,* 188 F.3d 287, 297 (5th Cir. 1999)).  The Court's "responsibility lay[s] in determining whether the administrator's actions were arbitrary and capricious, not in determining whether [the claimant] was, in the district court's view, entitled to disability benefits."  *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992); *see also Brown v. Hartford Life Ins. Co.,* No. 06-CV-115-JHP, 2010 WL 3649521, at *1 (E.D. Okla. Sept. 14, 2010).  The Court will uphold a claim determination based on substantial evidence in the administrative record.  The Tenth Circuit has defined substantial evidence as "mean[ing] more than a scintilla, of course, yet less than a preponderance."  *Adamson v. UNUM Life Ins. Co. of Am.,* 455 F.3d 1209, 1212 (10th Cir. 2006).

LINA has the dual role capacity of claim administrator and insurer of AD&D benefits under the Group Policies.  The Court may consider the presumed conflict of interest arising out of this dual capacity as a factor in its analysis.  *Brown*, 2010 WL 3649521, at *2 (discussing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).  The Supreme Court has emphasized that "*Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one," and that "conflicts are but one factor among many that a

reviewing judge must take into account." *Glenn*, 554 U.S. at 117.  The Supreme Court did not assign any special importance or weight to conflict of interest as a factor.  *Id.*, 116.

Randall has not contended that LINA's dual role capacity affected its claim and appeal determinations in any way.  The evidence in the administrative record shows that LINA reviewed Randall's claim in a thorough and objective manner.  There is no evidence that LINA's dual role capacity influenced in any way the claim determination.  Moreover, the Court also finds that LINA reasonably based its determinations on the Intoxication Exclusion and substantial evidence in the administrative record.  The Tenth Circuit has held that "a conflict of interest affects the outcome at the margin, where [the court] waver[s] between affirmance and reversal."  *Hancock v. Metropolitan Life Ins. Co.,* 590 F.3d 1141, 1155 (10th Cir. 2009).  Based on the evidence in the administrative record, this case is not "at the margin."  Consequently, the Court has given very little to LINA's presumed conflict arising out of its dual role capacity.

      **B.**      **The Intoxication Exclusion Bars Randall's AD&D Claim.**

LINA based its denial of Randall's AD&D claim on the Intoxication Exclusion.  LINA bears the burden to prove the applicability of this exclusion to the circumstances surrounding Mr. Randall's death.  The proof of the applicability of the Intoxication Exclusion in this case requires evidence showing that:

> (i) Mr. Randall was "operating . . . [his truck] while under the influence of alcohol;" and
>
> (ii) Mr. Randall's death "directly or *indirectly*, in whole or *in part*, [was] caused by or *result[ed] from*" his operation of his truck "while under the influence of alcohol."

Rec. 435; 467 (italics added).  The evidence in the administrative record established both elements of the Intoxication Exclusion.

      **1.**      **Mr. Randall Was Operating His Truck While Under the Influence of Alcohol.**

The Intoxication Exclusion defines "under the influence of alcohol" as meaning "intoxicated, as defined by the law of the state in which the Covered Accident occurred." *Id.* Mr. Randall's death occurred in Texas, and Texas defines a person with a BAC of "0.08% or more" as intoxicated. Tex. Penal Code § 49.01(2)(B). The Autopsy Report stated that Mr. Randall's BAC was 0.295% (Rec. 131; 135), which exceeded the Texas legal BAC limit by nearly four times. Mr. Randall was unquestionably intoxicated under the law of Texas at the time of his death. Moreover, Mr. Randall's conduct immediately preceding his death was consistent with a person who was severely impaired by alcohol. Rec. 51; 110; 113. LINA reasonably concluded that Mr. Randall had been operating his truck while under the influence of alcohol.

> **2.   Mr. Randall's Death Directly or Indirectly, In Whole or In Part, Was Caused by or Resulted From His Operation of His Truck While Under the Influence of Alcohol.**

The Intoxication Exclusion describes the requisite causal connection between the intoxicated operation of a vehicle and a covered loss as "directly or indirectly, in whole or in part, is caused by or results from" the intoxicated driving. Rec. 435; 467. These provisions clearly indicated that the intoxicated driving need not be the only or sole cause of the covered loss. The Intoxication Exclusion emphasizes this by describing the causal connection between the covered loss and the drunk driving through its use of "indirect," "in part," and "results from."

Mr. Randall's driving while severely intoxicated led to him driving up an Interstate overpass in the wrong direction and crashing his truck into a concrete barrier on the overpass, which wedged his truck between the concrete barrier and the edge of the overpass. This placed Mr. Randall next to the edge of an overpass. Shortly after he exited his disabled truck, as the investigating Medical Examiner observed, Mr. Randall apparently "stumbled over the edge of the bridge, falling to his death." Rec. 113. This outcome was perfectly consistent with someone who had consumed at least 18 twelve ounce beers. Rec. 50.

Based on this evidence, Mr. Randall's death at a minimum *indirectly* and *in part resulted from* his intoxicated driving. Mr. Randall would not have found himself in a severely intoxicated condition near the edge of an overpass, if he had not drunkenly driven to that spot and crashed into the concrete barrier next to the edge of the overpass. He also would not have needed to exit his truck near the edge of the overpass, if he had not disabled his truck by driving into the concrete barrier. Mr. Randall was already severely impaired as a result of his heavy drinking, and as Randall herself acknowledged in her insurance claim, the crash may have further disoriented him. Therefore, LINA reasonably concluded that Mr. Randall's driving while under the influence of alcohol was a contributing factor in his fatal fall from the overpass, and, therefore, reasonably determined that the Intoxication Exclusion barred AD&D coverage for Mr. Randall's death.

Randall argues the Intoxication Exclusion in effect requires the intoxicated driving of a vehicle to be the sole or substantial cause of the loss. ECF No. 17, at 7, 8-9. This argument ignores the Intoxication Exclusion's use of "*indirectly*," "*in part*," and "*results from*" to describe the connection between the covered loss and the drunk driving.

Other courts have rejected arguments like those of Randall, and found similar exclusions to require only that intoxication be an indirect cause. *See, e.g., Smith v. Liberty Life Ins. Co.,* 535 F.3d 308, 317 (5th Cir. 2008); *Veal v. Nationwide Life Ins. Co.,* No. 5:09-cv-356/RS/MD, 2010 WL 1380170, at *2 (N.D. Fla. Mar. 31, 2010); *Morgan v. Fortis Bens. Ins. Co.,* 107 P.3d 267, 270 (Alaska 2005). In *James-Smith v. Total Affiliates Accidental Death & Dismemberment Ins. Plan,* No. 3: 10CV2640, 2011 WL 4899992, at *6 (N.D. Ohio Oct. 13, 2011), the district court found an exclusion identical to the Intoxication Exclusion at issue to be unambiguous, and held that "*[d]e minimis* causation is enough" under such an exclusion. *Id.* (italics in original); *see also Sylvester v. Liberty Life Ins. Co.,* 42 P.3d 38, 40 & 41 (Colo. App. 2001) (*cert. denied* Mar.

4, 2002).  The decisions of these courts are consistent with this Court's construction of the Intoxication Exclusion of the Group Policies.

The facts of this case bring the circumstances of Mr. Randall's death within the Intoxication Exclusion.  The causal connection between Mr. Randall's intoxicated driving and ultimate death is at lease *de minimis,* and easily satisfies the Intoxication Exclusion's requirement that the covered loss (here Mr. Randall's death) *indirectly* and *in part resulted from* the intoxicated driving.

Randall correctly notes that the Tenth Circuit rejected a *per se* rule finding deaths due to drunk driving to be non-accidental in *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan,* 605 F.3d 789, 808-09 (10th Cir. 2010).  ECF No. 17, at 8).  However, Randall's reliance on *LaAsmar* is misplaced.  *LaAsmar* has no relevance to this case, because it involved an AD&D policy that did not contain an Intoxication Exclusion.  *LaAsmar,* 605 F.3d at 794, 813.  The Intoxication Exclusion present in the Group Policies in this case presents a  different situation than was before the Tenth Circuit in *LaAsmar.*

      **C.**     **ERISA Preempts Randall's Bad Faith Claim.**

In addition to her claim for benefits, Randall asserts a claim for bad faith breach of insurance contract.  ECF No. 2-1, at 2.  LINA responded by asserting that ERISA preempts the bad faith claim in both the notice of removal and the answer.  ECF No. 2, at 3; ECF No. 4, at 2 (response to paragraph 9; and 4 (Ninth Affirmative Defense).  Randall has acknowledged that ERISA governs this case.  ECF No. 17, at 6-7.  ERISA preempts state law bad faith claims.  *Kidneigh v. Unum Life Ins. Co. of America*, 345 F.3d 1182, 1185 (10th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004).  Therefore, Randall's bad faith claim fails as a matter of law.

ACCORDINGLY, the Court holds that Mr. Randall's driving while severely intoxicated "directly or indirectly, in whole or in part, … caused … or result[ed]" in his fatal fall from the

Interstate overpass, and that LINA reasonably denied Randall's AD&D benefits claims based on the Intoxication Exclusion and the evidence in the administrative record. Therefore, the Court orders that (i) plaintiff Jeanne Melissa Randall's request for judgment is denied, (ii) defendant Life Insurance Company of North America's request for judgment is granted, and (iii) judgment shall be entered in favor of defendant Life Insurance Company of North America.

**IT IS SO ORDERED** this 27th day of March, 2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma